COMMONWEALTH of Pennsylvania,
Appellee

v.

Schneider CHINE, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 17, 2012.

Filed Feb. 13, 2012.

David S. Rudenstein, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Mary L. Huber, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, J., and DONOHUE, J.

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant Schneider Chine of first-degree murder [1] and possession of an instrument of crime.[2] Appellant challenges the sufficiency and the weight of the evidence supporting the jury verdict and claims the trial court erred in refusing to give jury instructions on self-defense and voluntary manslaughter. After careful review, we affirm.

Appellant was charged with criminal homicide and related offenses in connection with the murder of Jaleel Loving Thomas (hereinafter "the victim"). The evidence presented at Appellant's trial established the following factual background. On October 28, 2008, a man named Jude Lundi made a phone call to the victim's brother, Shawn Thomas, and confronted him with accusations that he had been robbed by one of Thomas's friends named Steve. Thomas felt that Lundi was unfairly implicating him in this crime as Lundi used the phrase *"your man, Steve"* to identify the robber. N.T., 2/1/11, at 121. As a result, Thomas asked the victim, his older brother, to drive him over to Lundi's home to "clear his name." N.T., 2/1/11, at 123.

When Thomas and the victim arrived at the West Albanus Street home, Lundi was hanging out with his two friends, Javon Gateward and Appellant. When Thomas explained to Lundi that he had nothing to do with the robbery, Lundi and his friends demanded that Thomas tell them where they could find Steve, the alleged robber. As Thomas did not want to get into the middle of this conflict, Thomas refused to give the men any information about Steve. After Thomas became frustrated when Appellant repeatedly asked why he would not tell them where his friend was, Thomas asked Appellant if he wanted to fight. The victim attempted to mediate the situation and told Thomas "to chill." N.T., 2/1/11, at 133.

After Thomas calmed down and was ready to leave, he asked the victim for the keys to the car, which was parked approximately ninety feet away. Appellant said "F* *k that" and suddenly pulled out a black revolver from underneath his clothes and pointed it at the brothers. N.T., 2/1/11, at 135. As the victim was unaware of the gun because Appellant was behind him, Thomas tried to warn him by tapping him and running away. Even though Appellant knew both brothers were unarmed, he fired three shots at the unsuspecting victim's head. The first bullet missed, but the second two bullets hit the victim in the back of the head. Appellant then fired two shots at Thomas, but missed. After Thomas hid behind a car and looked back, he saw the victim lying on the ground and heard Appellant say "Yeah, pussy, boom, boom." N.T., 2/1/11, at 141. Once Appel-

---

**1.** 18 Pa.C.S.A. § 2502(a).

**2.** 18 Pa.C.S.A. § 907(a).

lant ran out of bullets, he fled the scene in a car.

Upon his arrest on November 30, 2008, Appellant *admitted to killing the victim.* Appellant claimed he felt it necessary to shoot the victim because he alleged that Thomas had asked the victim for the car keys in order to get his "burner" (gun) from the car, which was ninety feet away. Appellant gave a statement which included the following exchange:

> [Appellant:] ... [The victim] was just standing there like he didn't want to get involved. But when ... the victim reached into his pocket, I could hear the keys and I thought [the victim] was going to give [Thomas] the keys so he could get his burner.

> \* \* \*

> I didn't want [Thomas] to get the keys and get his gun and I saw that [the victim] was the immediate threat so I pulled the gun out of my pocket, pointed the gun at the back of [the victim's] head and fired a shot. I missed. Then I fired two more shots at [the victim's] head. [The victim] fell to the ground and then I fired two shots at [Thomas]. I was aiming for [Thomas's] legs, and he ran across the street.

> [Question:] When you fired the gun at [the victim], did you mean to kill him?

> [Appellant:] I didn't mean to kill him but I had to because I knew that if I didn't kill him, he would come back and kill me. He was that type of dude.

> [Question:] When you fired at [Thomas], did you mean to kill him?

> [Appellant:] No, I didn't want to kill him, but I did wanted [sic] him to feel it.

> [Question:] Did either [Thomas] or [the victim] have a gun?

> [Appellant:] I didn't see them with a gun.

N.T. 2/1/11, 47–48; Commonwealth Exhibit C–14.

On February 7, 2011, a jury convicted Appellant of first-degree murder and possession of an instrument of crime, and on the same day, the trial court imposed a sentence of life imprisonment. Appellant filed a timely post-sentence motion, which the trial court denied on February 16, 2011. Appellant filed this appeal and complied with the trial court's directions to submit a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

Appellant raises the following issues for our review on appeal:

I. Should [Appellant] be awarded an arrest of judgment on all charges where there is insufficient evidence to sustain the verdict and where the evidence only demonstrated that [Appellant] acted to protect himself and did not act with malice?

II. Should [Appellant] be awarded a new trial where, as here, the verdict is against the greater weight of the evidence which established that [Appellant] was acting without malice?

III. Is [Appellant] entitled to a new trial as the result of court error where the court failed to give the jury an instruction on self-defense/justification?

IV. Is [Appellant] entitled to a new trial as the result of court error where the court failed to charge on Voluntary Manslaughter (unreasonable belief)?

Appellant's Brief, at 3.

When presented with a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Our standard of review in assessing whether sufficient evidence was present-

ed to sustain Appellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Walsh,* 36 A.3d 613, 618–19 (Pa.Super.2012) (quoting *Commonwealth v. Brumbaugh,* 932 A.2d 108, 109–10 (Pa.Super.2007)).

■ A criminal homicide constitutes first-degree murder when the accused commits an intentional killing, which is statutorily defined as "willful, deliberate, and premeditated." 18 Pa.C.S.A. § 2502(a), (d). In order to sustain a conviction of first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: "(1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and

a specific intent to kill." *Commonwealth v. Sanchez,* —— Pa. ——, 36 A.3d 24, 37 (Pa.2011).

Appellant claims there was insufficient evidence to support his first-degree murder conviction because the Commonwealth failed to show he killed the victim with malice. However, our Supreme Court has further provided that:

> The Commonwealth may meet its burden of proof to show that the accused intentionally killed the victim through the use of wholly circumstantial evidence, such as evidence which shows the use of a deadly weapon by the accused on a vital part of the victim's body. [*Commonwealth v.*] *Smith,* 604 Pa. [126,] 142, 985 A.2d [886,] 895 [ (2009) ]; *Commonwealth v. Watkins,* 577 Pa. 194, 209, 843 A.2d 1203, 1211 (2003). Likewise, *malice may also be inferred from the use of a deadly weapon on a vital portion of the victim's body. Commonwealth v. Rawles,* 501 Pa. 514, 522, 462 A.2d 619, 623 (1983).

*Commonwealth v. Briggs,* 608 Pa. 430, 455–56, 12 A.3d 291, 306–307 (2011) (emphasis added). *See Commonwealth v. Cruz,* 919 A.2d 279, 281 (Pa.Super.2007) (finding that evidence that the defendant shot the victim in the back with a firearm was sufficient to support an inference of malice and specific intent to kill).

■ The evidence in this case clearly shows that Appellant murdered the victim with specific intent and malice when Appellant opened fire on an unsuspecting, unarmed victim who had his back to Appellant. Appellant surely intended the shooting to have fatal results as he fired three shots at the victim's head, a vital part of the body. Even after the victim fell to the ground, Appellant continued to shoot at Thomas, the victim's brother. After seeing the victim's body lying on the pavement with two bullet wounds to the

head, Appellant callously remarked, "Yeah, pussy, boom, boom." N.T., 2/1/11, at 141. Further, in his statement to police, Appellant admitted he felt that he "had to kill" the victim because he believed that victim would have returned to kill him. N.T., 2/1/11, 48.

Nevertheless, Appellant argues that there was insufficient evidence that he acted in malice because he was justified in killing the victim in self-defense. "If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt. Although the Commonwealth is required to disprove a claim of self-defense ... a jury is not required to believe the testimony of the defendant who raises ·the claim." *Commonwealth v. Houser*, 610 Pa. 264, 18 A.3d 1128, 1135 (Pa.2011).

As a general rule, an individual is justified in using force upon another person "when the actor believes that such force is *immediately necessary* for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a) (emphasis added). However, the Commonwealth may disprove a claim that a defendant's use of deadly force was justifiable by establishing that: 1) the defender did not reasonably believe deadly force was necessary to protect himself from imminent danger of death or great bodily harm, 2) the defender provoked the incident, or 3) the defender violated a duty to retreat with safety or avoid the danger. *Commonwealth v. Truong*, 36 A.3d 592, 598–99 (Pa.Super.2012) (*en banc*).

In this case, Appellant claims he had to defend himself with deadly force because he perceived that the victim's brother was going to retrieve his gun from a "nearby" car parked *ninety feet* away from the scene, come back to the scene, and shoot him. Even if the jury accepted Appel-

lant's account as true, we fail to see how the act of the victim in handing his brother car keys posed a threat of imminent danger on his life such that it was immediately necessary to ·respond with deadly force against the victim. Appellant does not explain why he thought the victim was "the immediate threat" when the unarmed victim did not speak to Appellant let alone threaten him, ·and who in Appellant's own words, was a "peacemaker" who calmed his brother down by telling him to "chill." N.T. 2/3/11, at 38, 77. Instead of retreating from the scene of this alleged threat, Appellant chose to shoot an unsuspecting, unarmed victim in the back of the head. As there is no evidence in the record to support Appellant's claim of self-defense and the Commonwealth presented ample evidence of Appellant's malice and intent to kill the victim, Appellant's sufficiency claim fails.

Appellant also claims that the jury's verdict was against the weight of the evidence.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa.Super.2005), *appeal denied*, 583 Pa. 694, 879 A.2d 781 (2005) (citing *Commonwealth v. Sullivan*, 820 A.2d 795, 805–806 (Pa.Super.2003), *appeal denied*, 574 Pa. 773, 833 A.2d 143 (2003) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751–752 (2000))). The Pennsylvania Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer*, 744 A.2d at 753 (citation omitted). To grant a new trial on the basis that the verdict· is against the weight of the evidence, this Court has explained that "the evidence must be 'so tenuous,

vague and uncertain that the verdict shocks the conscience of the court.'" *Sullivan*, 820 A.2d at 806 (quoting *Commonwealth v. La*, 433 Pa.Super. 432, 640 A.2d 1336, 1351 (1994), *appeal denied*, 540 Pa. 597, 655 A.2d 986 (1994)).

[This Court shall not undertake to reassess credibility of witnesses, as] it is well settled that we cannot substitute our judgment for that of the trier of fact. *Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa.Super.2008). Further, the finder of fact was free to believe the Commonwealth's witnesses and to disbelieve the witness for the Appellant. *See Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial).

*Commonwealth v. Bozic*, 997 A.2d 1211, 1223–24 (Pa.Super.2010) (citing *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa.Super.2009)).

To support his weight of the evidence claim, Appellant basically reiterates his sufficiency arguments and argues that the jury should have accepted his account of the events in question. As it is not the role of an appellate court to reweigh the evidence, we will not disturb the jury's credibility determinations as Appellant's first-degree murder conviction was not so contrary to the evidence as to shock the conscience of this Court.

■ In his third issue, Appellant claims the trial court erred in refusing to give a jury instruction on self-defense. "Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Commonwealth v. Hansley*, 24 A.3d 410, 420 (Pa.Super.2011) (quoting *Commonwealth v. Mayfield*, 401 Pa.Super. 560, 585 A.2d 1069, 1070–71 (1991) (en banc)) (emphasis added).

■ We find the trial court did not err in refusing to give this instruction as there was no evidentiary basis to support Appellant's claim of self-defense. As discussed above, we fail to see how it was necessary for Appellant to kill the victim to protect himself from the imminent danger of death when the unarmed victim neither threatened Appellant nor spoke to him, but actually acted as a peacemaker in calming down his brother. Even if we believe that the victim's brother threatened Appellant, we see no reason why Appellant should be entitled to use deadly force on the victim, an innocent bystander who simply gave his brother a set of keys. The victim had his back to Appellant and was unaware that Appellant was pointing a gun at his head when Appellant chose to shoot at him three times. Accordingly, Appellant was not entitled to a jury instruction on self-defense.

■ Lastly, Appellant claims the trial court should have given a jury instruction on voluntary manslaughter based on his "unreasonable belief" that "his life was in danger." However, as Appellant has cited no legal authorities nor developed any meaningful analysis, we find this issue waived for lack of development. Pa.R.A.P. 2119(a); *Commonwealth v. Johnson*, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009) (finding "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (citations omitted).

For the foregoing reasons, we affirm the trial court's judgment of sentence.

Affirmed.