J. S67044/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE JOSEPH RAINS, | : | |
| | : | |
| Appellant | : | No. 937 WDA 2014 |

Appeal from the Judgment of Sentence December 5, 2013
In the Court of Common Pleas of Beaver County
Criminal Division No(s).: CP-04-CR-0000322-2013

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED DECEMBER 10, 2014**

Appellant, Lawrence Joseph Rains, appeals from the judgment of

sentence entered in the Beaver County Court of Common Pleas. He argues

the evidence was insufficient to support his jury conviction of murder in the

first degree.[1] We affirm.

We glean the following facts from the trial court's opinion[2] and the trial

transcripts. The victim in this homicide case is Richard Lincheck ("Victim").

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] Trial was conducted before the Honorable John Dohanich; he subsequently "ended his term as an active trial judge . . . at the end of 2013." Trial Ct. Op., 5/6/14, at 1 n.1. Appellant's post-trial motion was heard by the Honorable James J. Ross, who also authored the opinion we cite above.

Victim's "neighbor, Myrica Tucker, was [in her apartment] on November 27, 2012 when she heard [a gunshot] outside and heard someone shout 'help me, help me.' Tucker looked out and saw a shadow pacing" for five to ten minutes inside Victim's home, in front of the window. Trial Ct. Op. at 3; N.T. Trial, 10/22/13, at 36-37. The man went to the door, "went back [to] pacing back and forth[,] came back to the [side] door, looked back out, and then left . . . real fast with a brown bag full of items." N.T., 10/22/13, at 40. Tucker called 911, went outside, followed the man into Victim's front yard, and asked him where Victim was and "what did he do to" Victim.[3] *Id.* at 40-41. Tucker then saw Victim lying on the ground with a gunshot wound to his head. Trial Ct. Op. at 3.

Tucker, as well as three other neighbors,[4] all "described a white male leaving the scene wearing blue jeans, a black coat, and a dark hat." *Id.* Police did not find "the man described as walking away from the scene." *Id.*

> Aliquippa Detective Steve Roberts [was at Victim's] residence [that evening. T]here was a bullet casing found on a set of steps inside the residence[,] a bullet strike to the kitchen wall, and blood in the kitchen doorway area. [Victim] was found face down outside the residence with a lot of blood in the head area. A prescription for oxycodone was found in his coat pocket, along with a prescription [in Victim's name. Victim] had on a cell phone holster but no cell phone was found[.] There were receipts for lottery

---

[3] Tucker testified that the man responded, "I'm going to Captain's to get us some beer." N.T. Trial, 10/22/13, at 42.

[4] These neighbors were Joesph Windsheimer, Marquete Williams, and Javon Walker. *Id.* at 3.

> tickets (but no lottery tickets) and bank withdrawal slips found on [Victim.]

*Id.* at 4-5.

Steven Murr, a friend of both Victim and Appellant,[5]

> testified that he personally knew and had occasion to observe that [Victim] owned both a .38 caliber revolver and a 9 mm handgun. [N.T., 10/24/13, at 172, 181-82, 184. Victim's brother] also testified that [Victim] owned a .38 caliber handgun and that [the brother] never found the .38 caliber revolver when cleaning out the house after [Victim's] death. [*Id.* at 96-98.]

*Id.* at 7. The police likewise did not find a revolver at Victim's home, but found .38 caliber ammunition inside a cupboard. *Id.* at 5.

> The next morning (November 28, 2012), [Aliquippa Police Officers] Ryan Pudik and . . . Giovanni Trello . . . responded to a call at the Suntex Gas Station for a report of a man down. It was initially believed that the man was struck by a car. However, when the officers arrived, they believed that he may be the suspect in the . . . shooting from the night before . . . because the man[, Appellant,] lying on the ground at the Suntex gas station had on the same clothing as described by the witnesses . . . namely a white male with a black coat and blue jeans. [Appellant] also had a large wound on his face. [Appellant] had a money clip in his possession with the inscription "Ricky" on it. [Victim was named Richard.]

*Id.* at 3-4. From the immediate area, police recovered a 9 mm handgun, a prescription bottle bearing Victim's name with blood on it, a Steelers hat with blood on it, and scratch-off lottery tickets. *Id.* at 4, 5. The blood on the prescription bottle and Steelers hat matched Victim's DNA profile. *Id.* at

---

[5] N.T., 10/24/13, at 169.

7. "The Pennsylvania State Police Laboratory also determined that [a DNA] swab from the 9 mm handgun. . . matched the DNA profile of" Appellant. *Id.* The officers also found a cell phone registered to Victim. *Id.* at 6. On the prior evening, police called Victim's cell phone multiple times and subsequently "were able to plot the location of the" phone while it was receiving calls. *Id.* The phone "started in the area [around Victim's home] and continued through an area near the creek bed where the cell phone was found." *Id.*

> A ballistics and firearms expert from the Pennsylvania State Police testified that the shells removed from the steps at [Victim's] residence . . . matched the 9 mm handgun found near . . . the Suntex gas station. The same expert testified that the bullet removed from the head of the victim matched a .38 caliber revolver. [N.T., 10/24/13, at 195, 203.]

Trial Ct. Op. at 7-8.

Dr. James Smith, a forensic pathologist, testified to the following. On the day after the shooting, he performed an autopsy on Victim. Victim suffered three gunshot wounds. Two caused superficial wounds in Victim's right upper abdomen, and "[t]he one that caused his death was a gunshot wound to the" left temple of his head. N.T., 10/24/13, at 117, 118, 139. The gunshot to the head caused "a contact wound," meaning "the gun, the weapon was placed directly against the skin." *Id.* at 124; *see also id.* at 133. In addition, the first two shots were to the abdomen and fired inside the house, and the fatal, third shot was fired outside of the house. *Id.* at

132.

The case proceeded to a jury trial on October 28, 2013, on the charges of homicide generally, robbery,[6] and firearms not to be carried without a license.[7] The jury found Appellant guilty of murder in the first degree as well as the other two charges. Additionally, the trial court found him guilty of persons not to carry firearms.[8] On December 5, 2013, the court imposed a mandatory sentence of life imprisonment without parole.[9]

Appellant filed a post-sentence motion, challenging the sufficiency and weight of the evidence.[10] On May 6, 2014, the court denied the motion. Appellant took this timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement.

Appellant presents one issue for our review: whether the Commonwealth presented sufficient evidence to establish murder in the first

---

[6] 18 Pa.C.S. § 3701(a)(1)(i).

[7] 18 Pa.C.S. § 6106.

[8] 18 Pa.C.S. § 6105.

[9] The court also imposed the following sentences: (1) 6½ to 13 years for robbery; (2) 3½ to 7 years for carrying a firearm without a license; and (3) 5 to 10 years for persons not to carry a firearm. All of these sentences are to run consecutive to each other but concurrent with the life sentence.

[10] Appellant's trial counsel, who was privately retained, also requested leave to withdraw and appointment of new counsel for Appellant. The court appointed new counsel, who requested additional time to file a supplemental motion. The court granted an extension of time, but counsel did not file a supplemental motion.

degree, specifically the element of intent to kill Victim.[11] Appellant avers the Commonwealth presented no direct evidence that he was the person who fired the shot that killed Victim or even that he was present at Victim's residence at the time of the shooting. Appellant further reasons that witnesses "failed to positively identify [him] as the individual at or near [Victim's] residence after gunshots . . . were heard," and that the witnesses' testimony "varied as to the number [of] shots heard and whether . . . yells or cries for help occurred before or after the gunshots." Appellant's Brief at 16. Appellant also contends that blood evidence collected at Victim's residence came from Victim only, and that none of Victim's blood was found on Appellant or his clothing. Appellant concludes that the Commonwealth presented only circumstantial evidence, and this evidence was insufficient to support a first-degree murder conviction.

Preliminarily, we note that although Appellant frames his issue as a challenge to the sufficiency of the evidence, he also includes argument

---

[11] In denying Appellant's post-sentence motion, the trial court reasoned that his claims of sufficiency and weight of the evidence lacked specificity. *See* Trial Ct. Op. at 8. The court noted that "boilerplate motions that simply state a verdict is against the weight of the evidence or that the evidence was insufficient . . . are deficient." *Id.* at 9 (citing *Commonwealth v. Holmes*, 461 A.2d 1268, 1273 (Pa. Super. 1983)). The trial court then observed that Appellant "merely stated that the evidence was insufficient and/or against the weight of the evidence, without specifying how or why." Trial Ct. Op. at 9. The court, however, also addressed Appellant's claims on the merits and found no relief would be due. We decline to find Appellant's issue waived for appellate review.

concerning the weight of the evidence—the witnesses' inconsistent accounts of the number of gunshots and Victim's yells for help. Because he raised the weight of the evidence before the trial court, we will consider both of Appellant's challenges.[12] Nevertheless, we find no relief is due.

This Court has stated:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Chine*, 40 A.3d 1239, 1241-42 (Pa. Super. 2013) (emphasis and some citations omitted), *appeal denied*, 63 A.3d 773 (Pa. 2013).

An allegation that the verdict is against the weight of

---

[12] *See* Pa.R.Crim.P. 607(A)(1)-(3); *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013).

the evidence is addressed to the discretion of the trial court. The Pennsylvania Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'"

[This Court shall not undertake to reassess credibility of witnesses, as] it is well settled that we cannot substitute our judgment for that of the trier of fact.

*Id.* at 1243-44 (citations omitted).

A criminal homicide constitutes first-degree murder when the accused commits an intentional killing, which is statutorily defined as "willful, deliberate, and premeditated." 18 Pa.C.S.A. §2502(a), (d). In order to sustain a conviction of first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: "(1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and a specific intent to kill."

\* \* \*

The Commonwealth may meet its burden of proof to show that the accused intentionally killed the victim through the use of wholly circumstantial evidence, such as evidence which shows the use of a deadly weapon by the accused on a vital part of the victim's body. Likewise, malice may also be inferred from the use of a deadly weapon on a vital portion of the victim's body.

*Id.* at 1242 (emphasis and some citations omitted).

In the case *sub judice*, the trial court noted Dr. Smith's testimony that Victim's death was caused by a gunshot wound to the head. Trial Ct. Op. at

11. The court opined that use of a weapon on a vital part of the body established the specific intent or malice element of first-degree murder. We agree with this analysis and note, specifically, that Dr. Smith opined that a gun was held against Victim's temple, such that it was touching Victim's skin, when it was fired.

The trial court then reasoned,

> This leaves only the second element [of first-degree murder] for discussion, namely that [Appellant] did the killing.
>
> The record in this case is replete with significant circumstantial evidence that ties [Appellant] to the killing. [Appellant] was found the day after the incident wearing clothes that matched the description of the person who left the crime scene on November 27, 2012. [Appellant] had a wound to his face that was described as a gunshot wound. He had items in his possession that belonged to the victim, and other items belonging to the victim were found in very close proximity to [Appellant]. Included in those items were a money clip with the inscription "Ricky," the victim's cell phone, prescription bottles in the name of the victim with pills, and a 9 mm handgun that matched 9 mm shells taken from the steps and walls of the residence at the crime scene. [Also, a swab from the 9 mm handgun . . . matched Appellant's DNA profile.] The police were able to track calls to [Victim's] cell phone on a route that led from the crime scene location to a creek bed just below the location where [Appellant] was found the next day. One of the pill bottles in the name of [Victim] had blood on it that [matched Victim's blood] through DNA analysis. . . .

Trial Ct. Op. at 12.

We agree with the trial court. We add that Dr. Smith opined that two gunshots, hitting Victim in the abdomen, were fired inside the residence, and the third, fatal shot to Victim's head was fired outside. N.T., 10/24/13, at

132. Myrica Tucker testified that she heard a gunshot and then saw a shadow pacing inside Victim's home in front of a window. Although the witnesses provided inconsistent testimony as to the number of gunshots and the timing of Victim's cries for help, the jury was tasked with assessing the credibility of the witnesses and was free to believe all, part or none of the evidence, and that we may not substitute our judgment for that of the jury. *See Chine*, 40 A.3d at 1241-42. Finally, as Appellant concedes, the Commonwealth may prove the element of first-degree murder by circumstantial evidence only. *See id.* at 1242; Appellant's Brief at 17. We reiterate that the Commonwealth is not required to present evidence that "preclude[s] every possibility of innocence." *Chine*, 40 A.3d at 1242. "[V]iewing all the evidence admitted at trial in the light most favorable to the" Commonwealth, we decline to hold the trial court erred in finding sufficient evidence to support the jury's guilty verdict of murder in the first degree. *See id.* Furthermore, we find no relief due on Appellant's weight of the evidence claim. To the extent Appellant asks this Court to reweigh the testimony given by the various witnesses, we cannot do so. *See id.* at 1243-44. Instead, we review the trial court's ruling on his weight claim, and find the court did not abuse its discretion. *See id.*

Judgment of sentence affirmed.

J. S67044/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2014