J-S45039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERTO CLARK | : | |
| | : | |
| Appellant | : | No. 3471 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0004808-2017

BEFORE:  BENDER, P.J.E., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED AUGUST 16, 2019**

The Appellant, Alberto Clark (Clark), appeals the judgment of sentence entered in the Court of Common Pleas of Lehigh County (trial court) following his conviction after a jury trial of theft by deception and receiving stolen property.  Clark argues on direct appeal that the evidence was insufficient to sustain his convictions, and that regardless of sufficiency, the verdict was against the weight of the evidence.  We affirm.

**I.**

The relevant case facts were thoroughly recounted in the trial court's opinion:

> [T]he evidence established that Barbara Leiby was the President and Secretary of the Morgenland Cemetery Association [the Association] . . . in January of 2017.  At that time, Kirk Hittinger,

_____

[*] Retired Senior Judge assigned to the Superior Court.

a bookkeeper, was named as Treasurer of the Association. Mrs. Leiby was familiar with Kirk Hittinger because he was a member of the Jerusalem Evangelical Lutheran Church, the church affiliated with the cemetery. . . . **As the Treasurer, Kirk Hittinger was added as an authorized user to the bank account of [the Association]**.

In March or April of 2017, Mrs. Leiby was approached by some vendors/creditors of the Morgenland Cemetery Association requesting payment of their outstanding bills. Surprised that the bills had not been timely paid, Mrs. Leiby [obtained Kirk Hittinger's checkbook.] Upon receipt of the checkbook, Mrs. Leiby was able to settle the outstanding debts that were owed to the creditors. In addition, in the summer of 2017, Mrs. Leiby went to the Wells Fargo Bank . . . to request statements for that year pertaining to the [the Association's] account. Upon reviewing the statements, Mrs. Leiby noted that **there were several online transfers of money from [the Association's] account to the bank account of "A. Clark."** Only being familiar with "A. Clark" as a member of the Jerusalem Evangelical Lutheran Church, Mrs. Leiby returned to Wells Fargo Bank and asked them to investigate the online transactions that totaled $4,700.00.

Jessica Neal, the Wells Fargo branch manager . . . reviewed the financial transactions involving [the Association's] account. She noted that on June 21, 2017, there was an online transfer of $1,000.00 from [the Association's] to the account of [Clark]. Then, on July 3, 2017, another transfer was made in the amount of $500.00. On July 6, 2017, a $1,000.00 was transferred from the [the Association's account] to [Clark's] account. Later that month, on July 24, 2017, another $1,000.00 online transfer was made.

Finally, on August 2, 2017, $1,200.00 was transferred from the [the Association] to [Clark's] account. Shortly after that transaction, [the Association's] bank account was closed and a new one was opened with a different account number associated with it. Ms. Neal indicated that, in her experience, she has never seen such transactions [result from] a bank error.

**It was revealed that "A. Clark" was [Clark].** When [Clark] was approximately [12] years old, Kirk Hittinger had adopted him. At that time, Kirk Hittinger . . . became [Clark's] foster father, and later he sought permanent legal custody of him. Kirk Hittinger

- 2 -

resided at 2401 Braebum Terrace, Lansdale, Montgomery County, Pennsylvania with [Clark]. Kirk Hittinger was employed as a window cleaner in Jenkintown and did not have a bank account of his own. On May 15, 2017, Kirk Hittinger underwent a medical procedure at Abington Memorial Hospital that resulted in further medical complications which necessitated his hospitalization. Kirk Hittinger was hospitalized from May 15, 2017 through June 20, 2017, and subsequently he went to a rehabilitation facility from June 20, 2017 through July 6, 2017. **Prior to being discharged from the hospital, Kirk Hittinger established a joint checking account with [Clark] on June 2, 2017, to facilitate paying his expenses**. While Kirk Hittinger was hospitalized and in rehabilitation, **[Clark] visited him daily and handled all of Kirk Hittinger's personal finances**.

After learning of the online transactions, Mrs. Leiby called [Clark] to speak with him about the five online transfers of money from [the Association's] bank account to [Clark's] bank account. **[Clark] stated that it must have been a bank error and that he would pay back the money**. However, [Clark] refused to put this verbal agreement in writing. Ultimately, charges were filed against [Clark] on August 31, 2017.

Trial Court Opinion, 11/2/2018, at 3-6 (emphases added, some citations and footnotes excluded).[1]

After the jury found Clark guilty, the trial court sentenced him to a jail term of up to 23 months as to the count of theft by deception. He did not receive a sentence on the count of receiving stolen property because it merged for sentencing purposes. Clark argued in his post-sentence motion that the evidence was insufficient to sustain both of his convictions and that verdict was against the weight of the evidence. The motion was denied. He timely

---

[1] These case facts were incorporated by reference into the trial court's 1925(a) opinion. **See** Trial Court 1925(a) Opinion, 1/2/2019, at 2.

appealed and both Clark and the trial court complied with Pa.R.A.P. 1925. In his brief, Clark reiterates the grounds he had set forth in his post-sentence motion. *See* Appellant's Brief, at 7.

## II.

A claim challenging the sufficiency of the evidence is a question of law regarding whether there is insufficient evidence to establish a material element of a crime beyond a reasonable doubt. ***See Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa. Super. 2003). On review of a sufficiency challenge, we must consider all the evidence admitted at trial in the light most favorable to the verdict winner. ***Commonwealth v. Taylor***, 831 A.2d 661, 663 (Pa. Super. 2003).

To carry its burden, the Commonwealth does not have to disprove every possibility of a defendant's innocence. ***See Commonwealth v. Hunzer***, 868 A.2d 498, 505 (Pa. Super. 2005). If there is conflicting evidence that raises doubt as to a defendant's guilt, the finder of fact resolves the conflict. ***See id***. The exception is when the evidence is so weak and inconclusive as to an element of an offense that, as a matter of law, the finder of fact is foreclosed from concluding that the Commonwealth has carried its burden of proof. ***See Commonwealth v. Jones***, 886 A.2d 689, 704 (Pa. Super. 2005). However, the finder of fact has free rein on whether to accept or reject the evidence before it, and the evidence is legally sufficient if it reasonably supports the verdict. ***Id***.

Importantly here, all elements of a crime, including the intent to defraud and receive stolen property, may be proven circumstantially through reasonable inferences from the evidence. ***See Commonwealth v. Biesecker***, 161 A.3d 321, 328-29 (Pa. Super. 2001). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Accordingly, we recognize that '[i]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.'" ***Id***. (quoting ***Commonwealth v. Matthews***, 870 A.2d 924, 929 (Pa. Super. 2005)) (citations omitted).

## A.

Clark was charged with receiving stolen property and theft by deception. The crime of receiving stolen property is:

> **(a) Offense defined.**--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa. C.S.A. § 3925(a). The crime of theft by deception is:

> **(a) Offense defined.**--A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
>
> (2) prevents another from acquiring information which would affect his judgment of a transaction; or

- 5 -

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

18 Pa.C.S. § 3922(a)(1).

The following facts establish that the evidence was sufficient to convict Clark of both of the subject offenses. It is undisputed that Clark obtained or withheld funds belonging to the Morgenland Cemetery Association. Clark's stepfather was the treasurer of the Association and had access to its bank account. Almost immediately after his stepfather became incapacitated in the summer of 2017, Clark linked him to his own personal bank account, enabling him to transfer the Association's funds under the guise of his stepfather. Throughout that summer, several electronic transactions netted Clark almost $5,000.00 dollars at the Association's expense.

The timing and manner of these transfers are strong circumstantial evidence that Clark knew he was spending money that did not belong to him. Clark's bank account had been overdrawn only two days before the first transaction occurred. Bank statements showed that Clark's spending increased significantly between that point and the time of the transfers' discovery. This tended to prove not only Clark's awareness of what had happened, but also the opportunity and financial motive to take advantage of his stepfather's access to the Association's funds.

Further, the physical incapacity of Clark's stepfather lends credence to the allegation that no one other than Clark spent the subject funds or caused

them to be transferred to his account. *See Biesecker*, 161 A.3d at 329 ("The jury could properly infer Appellant was involved in this scheme given the timing, familial relationship, and transfer of money."); *Commonwealth v. Nypaver*, 69 A.3d 708, 715 (Pa. Super. 2013) (circumstantial evidence of theft was sufficient based on defendant's relationship with perpetrator and conduct suggesting knowledge of the theft); *Commonwealth v. Quel*, 27 A.3d 1033, 1041 (Pa. Super. 2011) (["T]hrough an abundance of uncontradicted circumstantial evidence, the Commonwealth established Appellant intentionally and deceptively withheld currency that belonged to the school district by removing cash from deposit envelopes after verifying their contents in Quicken which created the false impression that the various student groups' finances were in order.").

Accordingly, we find that the evidence was sufficient to sustain both of Clark's convictions.

## III.

Clark's final claim regarding the weight of the evidence likewise has no merit. He contends that even if the evidence is legally sufficient, the absence of direct evidence linking him to the transfer of the Association's funds should have compelled the trial court to acquit him. We have recently explained that under our standard of review for such claims, there is a very high bar for establishing entitlement to relief:

> We do not review challenges to the weight of the evidence *de novo* on appeal. *See Commonwealth v. Rivera*, 603 Pa. 340, 983

> A.2d 1211, 1225 (2009). "[A]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Chine**, 40 A.3d 1239, 1243 (Pa. Super. 2012)(citation omitted).
>
> In order to grant a new trial on the grounds that the verdict is against the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Id.**, at 1243-1244 (citations omitted). A verdict shocks the judicial conscience when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench[.]" **Commonwealth v. Davidson**, 860 A.2d 575, 581 (Pa. Super. 2004) (citation omitted).

**Commonwealth v. Akhmedov**, 3443 EDA 2015, at p. 26 (Pa. Super. July 29, 2019) (*en banc*).

The evidence here, while circumstantial, is not tenuous or vague; nor does it even raise a hint that the verdict would shock the judicial conscience. To the contrary, the above-discussed evidence linking Clark to the theft and deception satisfies us that the trial court acted well within its discretion in denying his weight of evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/19

- 8 -