J-S68017-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDRE HOLMAN, | : | |
| | : | |
| Appellant | : | No. 1068 EDA 2014 |

Appeal from the Judgment of Sentence March 11, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0003694-2013

BEFORE:  BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED NOVEMBER 12, 2015**

Appellant, Andre Holman ("Holman"), appeals from the judgment of sentence entered on March 11, 2014 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his convictions of first-degree murder, robbery, conspiracy, and possessing instruments of crime ("PIC").[1]  After careful review, we affirm.

This case stems from the murder of taxi cab driver Sebastian Nunez-Suarez ("Nunez-Suarez") on the 4900 block of Bingham Street in Philadelphia, Pennsylvania.  The trial court summarized the testimony of Jonathan Vasquez ("Vasquez"), who participated in the robbery of Nunez-Suarez, as follows:

> Vasquez testified that he was [seventeen] years old and had lived in Philadelphia his entire life.  He

---
[1]  18 Pa.C.S.A. §§ 2502(a), 3701(a)(1)(i), 903(c), 907(a).

testified that in 2012 he was [fifteen] years old and in the [ninth] grade at Kensington High School. Vasquez stated that on the night of July 16, 2012[,] he was sitting on a friend's porch when Christopher Conway ("Conway") approached him with another person he had never seen before. He testified that he did not consider Conway a friend, but knew him from the neighborhood, and that Conway told him to put on a shirt and shoes [and] to come with them. Vasquez testified that he was told that they were going to rob a taxi driver. He stated that they went to 5th Street and Luzerne, got inside a taxi cab, with [Holman] sitting directly behind the driver, himself in the middle and Conway behind the passenger seat. Vasquez testified that [Conway] told the driver to go to D and Louden Street, which is a near a park. At some point[,] the cab stopped[,] and Vasquez stated that [Holman] said, "give me your money." Vasquez testified that the cab driver pulled out a machete, which he started swinging, and then [Holman] shot the taxi driver. [N.T., 3/7/14,] at 63-76.

Vasquez testified that the machete did not hit [Holman] but that it did scratch his own finger. He stated that when [Holman] asked the taxi driver for money, the gun was about [two and a half] feet from the head of the taxi driver. Vasquez stated that after [Holman] shot the driver, he tried to kick the window and then [Holman] shot the window because they could not open the door. He testified that the cab was moving and crashing into cars when they were still inside of it. He stated that after getting out of the cab, they ran in different directions.

Trial Court Opinion, 12/18/14, at 15-16.

On September 26, 2012, the Homicide Fugitive Unit brought Holman into the Homicide Division of the Philadelphia Police Department. After approximately four and a half hours of questioning, Holman signed a written

statement in which he confessed to killing Nunez-Suarez. The trial court

further provided the following procedural history for this case:

> On September 26, 2012, [Holman] was … charged with first[-]degree murder, robbery, conspiracy and [PIC]. This [c]ourt held a jury trial from March 6, 2014 to March 10, 2014.[1] On March 11, 2014, a jury found [Holman] guilty of first[-]degree murder, robbery, conspiracy and [PIC]. On that same day, this [c]ourt sentenced [Holman] to life imprisonment without the possibility of parole on the first[-]degree murder charge, [ten] to [twenty] years [of] state incarceration on the robbery and conspiracy charges, to run concurrently to one another and the life sentence, and no further penalty on the [PIC] charge.
>
> On March 11, 2014, [Holman] filed a [n]otice of [a]ppeal to [the] Superior Court. On August 12, 2014, upon receipt of the notes of testimony, this [c]ourt ordered defense counsel to file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal pursuant to Pa.R.A.P. 1925(b). On September 2, 2014, defense counsel filed a request for an extension of time, which this [c]ourt granted on September 3, 2014. This [c]ourt ordered defense counsel to file his [c]oncise [s]tatement of [e]rrors by October 3, 2014 and defense counsel did so.

> _____

> [1] [Codefendants Conway and Vasquez] pled guilty, with the latter entering an admission in juvenile court.

*Id.* at 2.

On appeal, Holman raises the following issues for our review:

> 1. Was there insufficient evidence given by the Commonwealth's [seventeen]-year-old codefendant, resulting in the jury rendering an inconsistent verdict?

- 3 -

2.	Was the verdict against the weight of the evidence?

3.	Did the trial court err by denying [Holman]'s [m]otion to [s]uppress his statement given the fact that he was under the influence of Xanax and held for over [six] hours, therefore making it impossible to give a statement knowingly, voluntarily, and intelligently?

4.	Did the trial court err by allowing pictures from the autopsy, showing stippling, speckling and a gunshot to the back of the head, to be shown to the jury?

5.	Did the trial court err by allowing the life in being witness to testify beyond the scope of reason for testimony?

6.	Did the trial court err by denying the defense's request to give the self-defense instruction?

Holman's Brief at 1-2.

For his first issue on appeal, Holman challenges the sufficiency of the evidence for his first-degree murder conviction.  **See** Holman's Brief at 5-6. Specifically, Holman argues that the Commonwealth failed to prove that he had the specific intent to kill Nunez-Suarez.  **Id.** at 6.  We conclude, however, that Holman has waived his challenge to the sufficiency of the evidence of his first-degree murder conviction.

In **Commonwealth v. Gibbs**, 981 A.2d 274 (Pa. Super. 2009), this Court held that an appellant must specify the elements of the crime for

which they wish to challenge the sufficiency of the evidence. *Id.* at 281.

Our Court explained:

> In a recent decision, ***Commonwealth v. Williams***, 959 A.2d 1252 (Pa. Super. 2008), this Court reiterated that when challenging the sufficiency of the evidence on appeal, the Appellant's 1925 statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. ***Williams***, 959 A.2d at 1257 (quoting ***Commonwealth v. Flores***, 921 A.2d 517, 522–23 (Pa. Super. 2007)). Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. *Id.* at 1258 n.9. Here, Appellant not only failed to specify which elements he was challenging in his 1925 statement, he also failed to specify which convictions he was challenging. While the trial court did address the topic of sufficiency in its opinion, we have held that this is "of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim." *Id.* at 1257 (quoting ***Flores*** at 522–23).

*Id.*

Here, like ***Gibbs***, Holman not only failed to specify the element of first-degree murder in his Rule 1925(b) statement that he was challenging on appeal, he also failed to specify which conviction he wished challenge. Holman's Rule 1925(b) statement merely states that "there was insufficient evidence given by the Commonwealth's [seventeen]-year-old [codefendant]. Therefore the jury rendered an inconsistent verdict." Rule 1925(b)

Statement, 10/2/14, ¶ 1. Although the trial court addressed Holman's sufficiency of the evidence claim, we must conclude that he has waived his first issue on appeal.[2] **See Gibbs**, 981 A.2d at 281.

Even if Holman had preserved his challenge to the sufficiency of the evidence, it would not warrant relief. Vasquez explicitly testified that Holman pointed a gun a Nunez-Suarez's head, told Nunez-Suarez to hand over his money, and after Nunez-Suarez started swinging a machete at them, Holman shot Nunez-Suarez in the head. N.T., 3/7/14, at 76-79. Our Supreme Court has held that "[t]he jury may infer the intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Sanchez**, 82 A.3d 943, 967 (Pa. 2013). Therefore, Holman's claim that the Commonwealth failed to present evidence that he possessed the specific intent to kill Nunez-Suarez is meritless.

For his second issue on appeal, Holman challenges the weight of the evidence. **See** Holman's Brief at 7-8. Holman has also waived his challenge to the weight of the evidence. An appellant must preserve a challenge to the weight of the evidence before the trial court either at sentencing or in a

---

[2] Holman also argues that the evidence was insufficient to sustain his convictions because Vasquez was not a credible witness. This argument challenges the weight of the evidence, not its sufficiency. **See Commonwealth v. Melvin**, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness'[] testimony goes to the weight of the evidence, not the sufficiency of the evidence.").

post-sentence motion. Pa.R.Crim.P. 607(A); **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014). Here, Holman failed to preserve his challenge to the weight of the evidence at sentencing or in a post-sentence motion. Therefore, Holman has waived his second issue on appeal.

For his third issue on appeal, Holman argues that the trial court erred by denying his motion to suppress his police statement, in which he confessed to shooting Nunez-Suarez. **See** Holman's Brief at 8-9. Holman asserts that the trial court should have suppressed his police statement because his confession was not voluntary, but rather coerced. **Id.** at 8. Holman contends that the police coerced his confession because they interrogated him for six hours, he was under the influence of Xanax, the police falsely led him to believe he could not invoke his Fifth Amendment right to remain silent, and the police told him that they would keep his pregnant girlfriend in custody until he confessed. **Id.**

We review the trial court's denial of a motion to suppress to determine whether the record supports the trial court's factual findings and whether it reached its legal conclusions in error. **Commonwealth v. Enick**, 70 A.3d 843, 845 (Pa. Super. 2013), *appeal denied*, 85 A.3d 482 (Pa. 2014). "If the record supports the trial court's findings of fact, we will reverse only if the trial court's legal conclusions are incorrect." **Id.** (citation omitted).

"When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession." *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998) (citations and footnote omitted). "When a defendant alleges that his waiver or confession was involuntary, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1268 (Pa. 2014) (citations omitted). Additionally,

> [t]he mere fact that there is some passage of time between when an accused is arrested and when he or she gives an inculpatory statement does not constitute grounds for suppression of the statement. This Court has set forth the following numerous factors that should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the duration and means of interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might

serve to drain one's powers of resistance to suggestion and coercion.

***Commonwealth v. Bryant***, 67 A.3d 716, 724 (Pa. 2013) (citations omitted).

The trial court determined that Holman's confession was voluntary, crediting the testimony of Detective John Harkins ("Detective Harkins"). ***See*** Trial Court Opinion, 12/18/14, at 32-33. The trial court explained:

> This [c]ourt heard testimony from Detective Harkins about how [Holman] was given food and cigarette breaks when requested, was held for [six] hours and [twenty-five] minutes, was able to see his girlfriend, and did not appear to be under any sort of psychological distress or influence of any drugs. Detective Harkins testified [Holman] reviewed his statement, made corrections when necessary, and then signed the statement. Further, [Holman] was not held overnight and deprived of sleep or questioned unusually because he was at the Homicide Unit during regular business hours, from 8:00 a.m. to around 2:00 p.m. In ***Bryant***, the appellant was interviewed over the course of thirty hours by multiple detectives, was given a chance to sleep at night, was allowed to speak with his wife was provided food and drink. Similarly, [Holman] in this case was interviewed for a lesser amount of time, under [seven] hours, was given food and drink and allowed to speak to his girlfriend. Looking at the totality of the circumstances, [Holman]'s statements was [sic] undeniably voluntary and given by his own free will.
>
> Moreover, [Holman]'s argument that he was under the influence of Xanax simply was not credible given that he himself answered negatively to the question of whether he was under the influence of any substances. [Holman] initialed each of the ***Miranda*** warning questions, including those

referencing any influence of drugs or alcohol. Furthermore, [Holman]'s testimony regarding how his signature was forged and that he did not speak at all was not credible to this [c]ourt, the factfinder, when he provided information in the statement about how the events that night proceeded. Finally, [Holman]'s argument that he was coerced by threats that his pregnant girlfriend would not be released without his signature on the statement[] rang false to this [c]ourt and is not supported by any evidence whatsoever. As such, this [c]ourt properly relied on the [Superior] Court's decision in **Bryant** as applied to the case at bar, resolved the issue of credibility in favor of Detective Harkins, and denied [Holman]'s [m]otion to [s]uppress his statement.

*Id.*

We conclude that the trial court did not err in denying Holman's motion to suppress his police confession. The certified record on appeal supports each of the trial court's findings with respect to Holman's interrogation and questioning. The certified record reflects that Holman was at the Homicide Division from approximately 8:00 a.m. to 2:30 p.m. and began giving his confession after about four and a half hours of questioning. N.T., 3/4/14, at 25, 27-28, 52. Holman received occasional breaks throughout the interview, including cigarette breaks when requested, and soda. *Id.* at 29-30. Detectives never refused Holman a break when he requested one and they permitted him to speak with his girlfriend when he asked to do so. *Id.* at 30-32, 42. Holman did not appear under the influence of any drugs or alcohol during questioning or when giving his confession and he appeared lucid throughout the entire process. *Id.* at 32-

33. Indeed, during his confession, when asked if he was under the influence of any drugs or alcohol, or prescription medication, Holman specifically responded "[n]o." *Id.* at 36. Police informed Holman of all of his *Miranda* rights, which included his right to remain silent, and did not threaten Holman in order to elicit a confession. *Id.* at 34-35.

Importantly, the trial court explicitly credited Detective Harkins testimony and discredited Holman's claims. *See* Trial Court Opinion, 12/18/14, at 33. This Court has held that "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony. The suppression court is also entitled to believe all, part or none of the evidence presented." *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (quotations and citation omitted). Therefore, the certified record supports the trial court's determination, based on the totality of the circumstances, that Holman's interrogation was not so manipulative or coercive that it deprived him of his ability to make a free and unconstrained decision to confess. *See Mitchell*, 105 A.3d at 1268. Thus, the trial court did not abuse its discretion in denying Holman's motion to suppress his police statement.

For his fourth issue on appeal, Holman argues that the trial court erred in admitting pictures from Nunez-Suarez's autopsy. Holman's Brief at 9. Holman asserts that the photographs were highly prejudicial because they

showed stippling[3] and a gunshot wound to the back of Nunez-Suarez's head.

***See id.*** Holman contends that the photographs were unnecessary because the medical examiner could have simply testified that Nunez-Suarez was shot at close range. ***Id.***

Regarding the admission of photographic evidence of a murder, our Supreme Court has stated the following:

> The admissibility of photographic evidence depicting a crime scene is within the sound discretion of the trial court, and the trial court's ruling will be reversed only upon an abuse of that discretion. ***Commonwealth v. Baez***, 720 A.2d 711, 726 (Pa. 1998). In determining whether to admit a photograph or videotape of a murder victim, a trial court must engage in a two-step analysis. ***Commonwealth v. Pruitt***, [] 951 A.2d 307, 319 ([Pa.] 2008). First, the court must determine whether the photograph is inflammatory. If it is not, the photograph may be admitted if it has relevance and can assist the jury's understanding of the facts.

---

[3] Dr. Gary Collins, the Chief Medical Examiner of the Philadelphia Medical Examiner's Office, defined stippling as follows:

> Stippling is a visual indication of range of fire. So when a gun is discharged, in addition to the bullet leaving the weapon, there are other components of that ignition that also leave the bullet -- I'm sorry. Leave the barrel with the bullet. There is soot. There's heat and then there's also the solid unburnt gun powder particles that also exit the gun.
>
> So based on the range of fire, the presence of either soot or stippling would give us an indication of how far the end of the weapon was when it was fired.

N.T., 3/7/14, at 146.

> If the photograph is inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury. ***Id.***

***Commonwealth v. Patterson***, 91 A.3d 55, 67 (Pa. 2014). Additionally, our Supreme Court has stated,

> A criminal homicide trial is, by its very nature, unpleasant, and the photographic images of the injuries inflicted are merely consonant with the brutality of the subject of inquiry. To permit the disturbing nature of the images of the victim to rule the question of admissibility would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt.

***Commonwealth v. Lyons***, 79 A.3d 1053, 1069-70 (Pa. 2013) (citation omitted).

The trial court determined that the photographs at issue were not inflammatory and were relevant in assisting the jury in understanding the facts of this case. ***See*** Trial Court Opinion, 12/18/14, at 35-38. We agree. While the photographs did depict a deceased murder victim, the trial court made efforts to sanitize the photographs. ***See*** N.T., 3/7/14, at 210-14. The photographs depicted the entry wound behind Nunez-Suarez's ear, near the base of his neck, with stippling around the wound. ***See id.*** The trial court,

however, would not admit the photographs until ensured that they did not depict any blood around the wound. *See id.* The certified record reflects that the photographs were also necessary to assist the medical examiner in explaining stippling to the jury, what it looks like, and how the stippling on Nunez-Suarez's gunshot wound revealed that Holman shot him at a range of two and a half to three feet. *Id.* at 146-47. Therefore, the record supports the trial court's determination that the photographs were not inflammatory and were relevant in assisting the jury in understanding the facts of this case. Accordingly, the trial court did not abuse its discretion in admitting the photographs.

For his fifth issue on appeal, Holman argues that the trial court erred in permitting Nunez-Suarez's son to testify as to why Nunez-Suarez was in possession of a machete at the time of his murder as opposed to limiting his testimony to the fact that his father was alive prior to the incident (life-in-being witness). Holman's Brief at 9-10.

We conclude that Holman has waived this issue on appeal. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009); *see also* Pa.R.A.P. 2119(a) (each point raised in an argument must be "followed by such discussion and citation of authorities as are deemed pertinent"); *Commonwealth v.*

***B.D.G.***, 959 A.2d 362, 371-72 (Pa. Super. 2008) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived."). This issue takes up little more than seven lines of Holman's appellate brief and includes no citation to any authority or the record. ***See*** Holman's Brief at 9-10. Holman's argument for how this testimony prejudiced him amounts to one sentence. ***See id.*** at 10. Accordingly, Holman has failed to develop this issue in a meaningful fashion capable of review and has therefore waived his fifth issue on appeal. ***See Johnson***, 985 A.2d at 924.

For his final issue on appeal, Holman argues that the trial court erred by denying his request to give the jury a self-defense instruction. ***Id.*** at 10. Holman contends that the he was entitled to a self-defense instruction because Nunez-Suarez was swinging a machete before he shot him, which could have led the jury to conclude that Holman only shot Nunez-Suarez because he was protecting his own life. ***Id.*** We conclude that Holman has also waived this issue for failing to develop an argument. This issue takes up little more than eleven lines of Holman's appellate brief and once again includes no citation to any authority or the record. ***See*** Holman's Brief at 10. Accordingly, because Holman has failed to develop this issue in a meaningful fashion capable of review and has therefore waived his final issue on appeal. ***See Johnson***, 985 A.2d at 924.

Moreover, even if Holman had properly developed this issue, it would not entitle him to relief. "A trial court must instruct a jury on a defense if the defense was raised properly and supported by the record, and its refusal to give an instruction is subject to an abuse-of-discretion standard of review." *Commonwealth v. Sasse*, 921 A.2d 1229, 1238 (Pa. Super. 2007). Regarding a self-defense jury instruction, this Court has explained:

> As a general rule, an individual is justified in using force upon another person "when the actor believes that such force is **immediately necessary** for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a) (emphasis added). However, the Commonwealth may disprove a claim that a defendant's use of deadly force was justifiable by establishing that: 1) the defender did not reasonably believe deadly force was necessary to protect himself from imminent danger of death or great bodily harm, 2) the defender provoked the incident, or 3) the defender violated a duty to retreat with safety or avoid the danger. *Commonwealth v. Truong*, 36 A.3d 592, 598–99 (Pa. Super. 2012) (en banc).

*Commonwealth v. Chine*, 40 A.3d 1239, 1243 (Pa. Super. 2012) (emphasis in original).

Here, the certified record reflects that Holman pointed a gun at Nunez-Suarez and ordered him to hand over his money while Holman was sitting behind him in a taxicab. N.T., 3/7/14, at 76-79. Although Nunez-Suarez then proceeded to swing a machete at Holman, the record is clear that Holman provoked the incident. *See id.* Therefore, the trial court did not

abuse its discretion in refusing give the jury a self-defense instruction in this case, as the defense was not supported by the record. *See Chine*, 40 A.3d at 1243; *Sasse*, 921 A.2d at 1238.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2015