J-S10028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KARL ROSEBORO, | |
| Appellant | No. 2833 EDA 2014 |

Appeal from the Judgment of Sentence Entered September 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001397-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED MARCH 09, 2016**

Appellant, Karl Roseboro, appeals from the judgment of sentence of an aggregate term of life imprisonment, imposed after he was convicted of murder of the first degree, violations of the uniform firearms act (VUFA), and possession of an instrument of crime.  Appellant challenges the sufficiency of the evidence to sustain his convictions and alleges the trial court erred in denying his motion for mistrial.  We affirm.

The facts which led to Appellant's convictions are set forth by the trial court in the following portion of its Pa.R.A.P. 1925(a) opinion:

> Officer Daniel Levitt testified that on August 4, 2012, at 2:09 A.M., he received a radio call for a report of a woman screaming in an alley followed by gunshots near Wayne Avenue and Brunner Street in the Nicetown neighborhood of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Philadelphia. Upon arrival, his partner discovered Rhonda Williams' [(hereinafter "Decedent")] body lying face down in an alley behind the 4200 block of Wayne Avenue and the 1900 block of Brunner Street.

[D]ecedent was pronounced [dead] by medics at the crime scene at 2:31 A.M. on August 4, 2012. The Medical Examiner [("ME")] testified that the cause of death was multiple gunshot wounds; the manner of death was homicide. [D]ecedent had four gunshot wounds, one to her forearm and three to her head. Additionally, she suffered blunt force trauma to her face, chin, and elbow, consistent with terminal collapse.

[D]ecedent had a perforating gunshot wound on the front of her forearm. This bullet fractured [D]ecedent's radius, which would have caused her to experience blood loss and pain. The wound was surrounded by soot, indicating that the muzzle of the gun was within six inches of her arm when the trigger was pulled.

The ME testified that any of the three gunshots inflicted to [D]ecedent's head would have caused her to immediately collapse without being able to walk, talk, or control her limbs. The gunshot wound behind [D]ecedent's ear was extensively blackened, indicating that the muzzle of the gun was in direct contact with [D]ecedent's skin/scalp. The two gunshot wounds to the back of [D]ecedent's head had pink abrasions around the entry wounds. The ME estimated that these wounds were inflicted from a distance of approximately two-and-a-half feet or more away.

Video and audio surveillance from a nearby business captured [Appellant] and [D]ecedent just moments before the shooting, walking in the direction of the alley and out of the camera's range. Officer Terrence Lewis of the Crime Scene Unit testified that it is approximately fifty-five feet to the entrance of the alley from where [Appellant] and [D]ecedent are last seen in the video. Approximately thirty seconds after [Appellant] and [D]ecedent walk out of the camera's range, four loud "pops" are heard.

Officer Lewis also testified that the alley where [D]ecedent's body was found was three feet and five inches wide.

Shaquilla Harmon testified that [D]ecedent was her cousin, and that [Harmon] started dating [Appellant] around July 4, 2012. [Appellant] sold crack and marijuana on the 1800 block of Brunner Street every day. He kept his drugs behind a house near where [D]ecedent's body was found. [D]ecedent was addicted to crack, and Ms. Harmon observed [Appellant] sell crack to [D]ecedent on numerous occasions. Sometimes[,] [Appellant] would give [D]ecedent crack for free; when [D]ecedent did not have money to purchase crack, she would tell [Appellant] that Ms. Harmon would cover her, which was untrue.

Ms. Harmon testified that she met up with [Appellant] at a bar on Wayne Avenue around 12:00-1:00 A.M. on the night of the shooting. [Appellant] stated that he did not want to leave the bar, so Ms. Harmon left him and went home. He was asleep in their living room when she left for work around 3:00 A.M. Ms. Harmon received a call about [D]ecedent's murder around 4:00-5:00 A.M. and went to the crime scene. Ms. Harmon saw [Appellant] later that day and observed that he had a large scrape, the size of a "peach," on his elbow.

Ms. Harmon testified that she cried when homicide detectives showed her the video footage of [Appellant] and [D]ecedent just moments before the shooting. She identified [Appellant] and [D]ecedent as the two people walking toward the alley. Ms. Harmon testified that [Appellant] was also known as "Dave," and that she was able to identify him in the video because of his height, size, and his "distinctive walk." [Appellant] walked with hunched shoulders.

Lydia Negron testified that she knew [D]ecedent for many years and that [D]ecedent was addicted to crack. She saw [Appellant] on the 1800 block of Brunner Street every day. She testified that [Appellant] had a distinctive "slump-type" walk to him, i.e. he would walk with his shoulders up towards his head. When homicide detectives showed Ms. Negron the video, she was able to identify [Appellant] and the [D]ecedent because of the way they both walk.

[D]ecedent's children, Cozette and Tyheem, were sitting on the front steps of Ms. Negron's house in the afternoon of August 4, 2012. Ms. Negron testified that [Appellant] approached them and that he appeared scared, fidgety, and a little upset. When asked where he was at the time [D]ecedent

was killed, [Appellant] replied that he was not in the neighborhood.

[D]ecedent's son, Tyheem Williams testified that he knew [Appellant] from the neighborhood. [Appellant] was known as "Caveman" and hung out on the 1800 block of Brunner Street, where [D]ecedent also resided. He testified that [D]ecedent would purchase crack from [Appellant] on that block throughout the day.

Mr. Williams testified that he hung out with his mother on the night she was killed and observed her smoke crack that evening. He also saw [Appellant] somewhere between 10 P.M. and 12 A.M. Mr. Williams testified that [Appellant] was wearing jeans and a yellow t-shirt with a Levi's logo across the chest. He identified [Appellant] and [D]ecedent on the video at trial. Mr. Williams also testified that [Appellant's] and [D]ecedent's clothing on the video were consistent with what he observed them wearing on the night of the shooting.

Mr. Williams spoke to [Appellant] outside of Lydia Negron's house the afternoon following the shooting. He told [Appellant] that he had heard that [Appellant] was involved in his mother's murder. [Appellant] appeared nervous. He responded that he was not involved and that he would not do such a thing since he had lost his own mother. [Appellant] then stated that he recalled seeing Mr. Williams on Germantown Avenue and Juniata Street, a few blocks away from where [D]ecedent was shot, when the gunshots went off and that they greeted each other. Mr. Williams testified that that interaction never occurred.

Dominique Jackson testified that she was also sitting on Lydia Negron's porch with [D]ecedent's children when they confronted [Appellant] as to his whereabouts at the time of the shooting. She testified that [Appellant] appeared nervous, sweating, that his lips were shaking, and that he was stumbling on his words. She also observed that [Appellant] had scrapes around his elbow.

Ms. Jackson testified that [Appellant] always hung out on the 1800 block of Brunner Street. She saw [Appellant] on that block the day [D]ecedent was killed, but she never saw him out there again after that day.

Trial Court Opinion ("TCO"), 4/30/15, at 3-7.

- 4 -

Based on the foregoing evidence presented at a jury trial, on September 16, 2014, Appellant was found guilty of first-degree murder, two counts of VUFA, and possession of an instrument in crime. That same day, he was sentenced to life imprisonment without the possibility of parole. Appellant filed a timely notice of appeal, followed by a timely court-ordered Rule 1925(b) statement of matters complained of on appeal.

Herein, Appellant presents the following issues for our review:

1. Is Appellant's Murder in the First Degree conviction against the sufficiency of the evidence because neither specific intent to kill nor malice were proven beyond a reasonable doubt?

2. Did the trial court err in failing to grant Appellant's Motion for a Mistrial when the prosecutor engaged in misconduct and drew explicit adverse inferences in relation to Appellant's right not to testify at trial and confess to police?

Appellant's Brief at 4.

When presented with a challenge to the sufficiency of the evidence, our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying this test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test,

- 5 -

the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Chine*, 40 A.3d 1239, 1242 (Pa. Super. 2012).

It has been well-established that "[t]o sustain a conviction for murder of the first degree, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with malice and intent to kill." *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015). *See also* 18 Pa.C.S. § 2502(a). "Section 2502 of the Crimes Code defines murder of the first degree as an 'intentional killing,' 18 Pa.C.S. § 2502(a), which, in turn, is defined as a … 'willful, deliberate and premeditated killing.'" *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (quoting 18 Pa.C.S. § 2502(d)). "[T]he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact[,] the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." *Hitcho*, 123 A.3d at 746.

Appellant asserts that the Commonwealth failed to prove a specific intent to kill and/or malice and, thus, there was insufficient evidence presented at trial to support his first-degree murder conviction. Appellant's Brief at 8. However, as we have previously acknowledged:

> The Commonwealth may meet its burden of proof to show that the accused intentionally killed the victim through the

- 6 -

use of wholly circumstantial evidence, such as evidence which shows the use of a deadly weapon by the accused on a vital part of the victim's body. Likewise, malice may also be inferred from the use of a deadly weapon on a vital portion of the victim's body.

*Chine*, 40 A.3d at 1242 (quoting **Commonwealth v. Briggs**, 12 A.3d 291, 306-307 (Pa. 2011) (internal quotation marks, citations, and italics omitted)).

After careful review, we conclude that the evidence in this case clearly supports a finding that Appellant murdered the victim with specific intent and malice. The ME determined the cause of death to be gunshot wounds and testified that Decedent suffered four gunshot wounds, three of which were to the back of her head. TCO at 3. The ME further explained "that any of the three gunshots inflicted to [D]ecedent's head would have caused her to immediately collapse without being able to walk, talk, or control her limbs." *Id.* The finding of specific intent and malice is further supported by the ME's conclusion that one of the gunshots was inflicted by placing the muzzle of the gun in direct contact with the back of Decedent's head. N.T. Trial, 9/11/14, at 14, 23. **See Chine**, 40 A.3d at 1242 (finding the appellant acted with malice and the specific intent to kill where he fired three shots at the back of the victim's head, a vital part of the body). **See also Commonwealth v. Cruz**, 919 A.2d 279, 281 (Pa. Super. 2007) (stating that evidence the appellant shot the victim in the back with a firearm was sufficient to support an inference of malice and specific intent to kill).

Appellant attempts to argue that the scrape on his elbow is indicative of a struggle with Decedent and, therefore, the evidence is insufficient to prove that he acted with malice and the specific intent to kill. Appellant's Brief at 10-11. However, we conclude that this argument is without merit. The record contains no evidence of a struggle between Appellant and Decedent. In fact, when asked if the autopsy of Decedent's body revealed any evidence that Decedent may have engaged in a fight with Appellant prior to being shot, the ME answered, "None whatsoever." N.T. Trial, 9/11/14, at 19.

Having concluded that the above-summarized evidence is sufficient to establish all three elements of first-degree murder, we now turn to the second issue raised by Appellant regarding the denial of his motion for a mistrial. Appellant avers that the trial court erred in failing to grant a mistrial, "because the prosecutor engaged in outrageous closing argument, repeatedly ignored the trial court's sustaining of objections, and drew [an] adverse inference regarding Appellant's right to remain silent." Appellant's Brief at 12.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will … discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing

and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Fortenbaugh*, 69 A.3d 191, 193 (Pa. 2013) (quoting

*Commonwealth v. Chamberlain*, 30 A.3d 381 (Pa. 2011)).

In addition, we note:

[O]ur standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate mark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vaccum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Lopez*, 57 A.3d 74, 84 (Pa. Super. 2012) (internal

citations and quotation marks omitted).

Appellant avers that the prosecutor's closing argument deprived him of a fair trial. In particular, Appellant alleges that "the prosecutor improperly drew [an] adverse inference regarding Appellant's right to remain silent," Appellant's Brief at 20, and he states that, in general, prosecutorial comments implicating a defendant's decision to remain silent after arrest violate the defendant's Fifth Amendment right to remain silent. *Id.* at 13, 15.

While we agree with Appellant's assertions that his decision not to testify cannot be used against him,[1] our Supreme Court has also held that, "where a prosecutor's reference to a defendant's silence is a fair response to a claim made by defendant or his counsel at trial, there is no violation of the Fifth Amendment privilege against self-incrimination." *Id.* at 251.

Here, it was Appellant's counsel who first raised the issue of Appellant's decision to remain silent at trial. During closing argument, the following statements were made:

| | |
|---|---|
| [Appellant's Counsel]: | I also need to say one other thing. The decision of my client to testify, although it ultimately is his, was mine in this case. |
| Prosecutor: | Objection. |
| The [c]ourt: | Sustained. |
| [Appellant's Counsel]: | I didn't believe he needed to testify. |
| Prosecutor: | Objection. |
| The [c]ourt: | Sustained. |
| | … |
| [Appellant's Counsel]: | As I told you before, typically in these homicide cases, there is a statement of the [d]efendant, a confession. I did it but I didn't mean to do it. I was this. I was that. There is nothing. There is nothing of that. |

N.T. Trial, 9/12/14, at 42-43, 46.

---

[1] ***See Commonwealth v. Copenhefer***, 719 A.2d 242, 251 (Pa. 1998), *cert. denied*, 528 U.S. 830 (1999).

The prosecutor responded as follows:

Prosecutor: [Appellant's Counsel] even has the nerve to bring up the fact that there is no confession in this case. [Appellant] doesn't have to testify. It is his constitutional right. It is based on the Fifth Amendment of the Bill of Rights of the United States Constitution. Bill of Rights was made to insure fairness in our society. That is his constitutional right. You cannot hold it against him. He can say I plead the Fifth and I am not going to confess to you, detective.

…

Prosecutor: You can't use your rights as a sword and a shield.

…

Prosecutor: You can't hold it against the Commonwealth because he didn't confess. He has a right not to.

*Id.* at 121-122.

As explained by the trial court in its opinion:

Defense counsel made a tactical decision to comment on [Appellant's] silence. In doing so, the defense "opened the door" to the Commonwealth['s] making responsive closing remarks. Where defense counsel "opens the door" to commentary on the defendant's silence, there is no Fifth Amendment proscription precluding the raising of that silence in fair response. [**Commonwealth v.**] **Adams**, 39 A.3d [310,] 320 [(Pa. Super. 2012)] (citations omitted). As the Pennsylvania Supreme Court noted in its unanimous opinion in [**Commonwealth**] **v. Whitney**, 708 A.2d 471, 478 (Pa. 1998): "Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt."

TCO at 11.

The trial court went on to state:

- 11 -

> Even if impermissible, any error resulting from the Commonwealth's reference to [Appellant's] silence was harmless. *See Adams*, 39 A.3d at 322 (citing [*Commonwealth v.*] *Molina*, 33 A.3d [51,] 58 [(Pa. Super. 2011)] (references to a defendant's right to remain silent are reviewed under a harmless error analysis)). Any resulting prejudice from the prosecution's comments was *de minimis*, and the evidence of [Appellant's] guilt was overwhelming such that any prejudicial effect of the error was insignificant by comparison to the verdict. The Commonwealth presented ample circumstantial evidence connecting [Appellant] to … [D]ecedent's murder. *See* [*Commonwealth*] *v. Mitchell*, 839 A.2d 202, 215 n.2 (Pa. 2003) (there is no impediment to considering … uncontradicted circumstantial evidence when conducting a harmless error analysis and an improper prosecutorial reference to the defendant's silence may be harmless given uncontradicted evidence of guilt).

TCO at 12.

We agree with the trial court. Moreover, we note that the court repeatedly instructed the jurors that Appellant had an absolute right to remain silent, that he had no obligation to testify at trial, and that the jurors could not draw any inference of guilt or hold Appellant's silence against him in any way. N.T. Trial, 9/8/14, at 20; N.T. Trial, 9/9/14, at 7; N.T. Trial, 9/12/14, at 157. Thus, even if the prosecutor's statements were deemed impermissible, we conclude that these instructions by the court were sufficient to cure any potential prejudice Appellant could have suffered as a result. *See Commonwealth v. Sneed*, 45 A.3d 1096, 1112 (Pa. 2012) (holding that even if the prosecutor's comment regarding the defendant's silence was improper, the trial court cured any error by its charge, instructing the jury that the defendant had an absolute right to remain silent and that they could not draw any adverse inferences from the fact that the

defendant did not testify). We, therefore, ascertain no abuse of discretion by the trial court in its denial of Appellant's motion for a mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016