J-A14032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONTAE HARDY | : | |
| | : | |
| Appellant | : | No. 314 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003084-2020

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED SEPTEMBER 24, 2025**

Appellant, Dontae Hardy, appeals from the judgment of sentence imposed following his bench convictions for rape by forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion ("IDSI"), sexual assault, indecent assault by forcible compulsion, indecent exposure, and indecent assault without consent.[1] In this appeal, Appellant argues the trial court erred by denying his motion for a new trial on the ground that his convictions were contrary to the weight of the evidence. We affirm.

The trial court accurately summarized the evidence, as follows:

While in an exam room at a pediatrician's office, [Appellant] exposed his penis to [the victim], forced her to perform oral sex on him, and ejaculated in her mouth without her consent.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3124.1, 3126(a)(2), 3127(a) and 3126(a)(1), respectively.

[Appellant and the victim] had been in an on-again, off-again relationship. They had broken up about a week and a half before the assault. They had a daughter together, who was about 6½ months old[, for whom Appellant had full custody at that time].

On June 29, 2020, [the victim and Appellant] traveled by train together to attend a pediatrician appointment for their daughter. They were directed to an exam room to wait for the doctor. They waited with the door closed. [The victim] walked around the room holding their daughter. [Appellant] sat in a chair. He told [the victim] that he still loved her, and he asked her to sit next to him. He asked her, "[S]uck my penis." She told him "no" multiple times. He pulled her onto his lap while she was still holding their daughter. [The victim] stood up and moved away. Eventually, she put the baby in her stroller and sat in the chair next to him. [She] explained at trial that she was afraid that [Appellant] would hit her if she did not sit down.

[Appellant] took his penis out of his pants. [The victim] told him, "put it away," but he didn't. He played with her hair, then he moved his hand down her neck. He pushed her head down to his penis, forcing her to perform oral sex on him. [The victim] struggled to pull her head away. The forced fellatio lasted approximately three minutes. He ejaculated in her mouth "a little bit," but mostly on his shirt. [Appellant] took off his shirt and threw it away before the doctor came into the room.

At trial, [Appellant] admitted that they engaged in fellatio, but he denied that he forced [the victim] to participate. He did admit that he ejaculated in her mouth "a little bit" even though he knew she did not want him to. He also explained that they were still in a relationship at that point. According to him, they only broke up later [that day] after he called her an offensive name (THOT— "that ho over there"), which lead [the victim] to become upset with him. The parties also stipulated to several character witnesses on [Appellant's] behalf for having a reputation for truthfulness, law-abidingness, and non-violence.

The doctor arrived approximately two minutes later. After the doctor's appointment, [the victim] left the facility alone. She called her mother[]. Her mother described [the victim's] emotional state as "very upset," "crying," and that her voice was "shaky." [The victim] then traveled to the Family Court building to obtain [an] emergency custody or a protection from abuse order. Finding the court closed, she went to a hospital for medical

treatment. The hospital called law enforcement, and she was transported to the Special Victims Unit, where she filed a complaint against [Appellant].

In August of that year, [Appellant] was arrested for the present case. Shortly thereafter, [the victim] received full custody of their daughter. [Appellant] retained visitation rights. [Appellant and the victim] continued to exchange affectionate messages on a social medial platform. [The victim] explained that she was motivated by her desire "to try to have a family."

Opinion, Schultz, J., 5/28/24 ("Trial Court Opinion"), 1-3 (record citations omitted). In addition, there was testimony establishing an on-going custody dispute starting in January 2020. **See** N.T. Trial, 2/6/23, 10-11, 26, 39-45. In January 2020, the victim alleged in the custody dispute that Appellant assaulted her, leaving strangulation marks on her neck. **See id.**, 39-40.

Appellant was tried on February 6, 2023. The court held its verdict until February 10th when it announced that it found Appellant guilty of the offenses mentioned above.[2] **See** N.T. Verdict, 2/10/23, 2-3. On August 11, 2023, the court imposed concurrent terms of 36 to 72 months' imprisonment followed by three years' probation on each of the rape, IDSI, and sexual assault convictions.[3] **See** N.T. Sentencing, 8/11/23, 69-70. It imposed no further punishment on the indecent assault and indecent exposure convictions. **Id.**, 70.

_____

[2] It also found Appellant not guilty of terroristic threats, simple assault, and recklessly endangering another person. **See** N.T. Verdict, 2/10/23, 3.

[3] The Sentencing Guidelines recommended a standard range for a minimum term of imprisonment of 60 to 78 months' for the rape and IDSI convictions. **See** N.T. Sentencing, 8/11/23, 5.

Trial counsel timely filed a post-sentence motion for Appellant on August 19, 2023, generically challenging both the weight and sufficiency of the evidence. **See** Appellant's Post-Sentence Motion, 8/19/23. Trial counsel subsequently requested leave to withdraw, and present counsel was appointed to represent Appellant. **See** Order, 9/15/23 (granting leave to withdraw); Order, 9/15/23 (appointing new counsel). On December 12, 2023, Appellant filed a supplemental post-sentence motion, challenging the sentencing court's discretion and the weight of the evidence. **See** Appellant's Supplemental Post-Sentence Motion, 12/12/23. With respect to the weight of the evidence, Appellant explicitly alleged that the victim's testimony "was incredible," inconsistent with her prior statements, "and/or contradicted by the other evidence presented to the jury at trial: *i.e.*, the testimony of other witnesses [], police reports, Family Court records/orders, medical records, and Instagram messages." *Id.*, ¶ 11. Appellant also alleged that "there was an absence of evidence presented at trial to corroborate the [victim's] testimony in a material or significant manner" and that her "behavior during trial was further evidence of her testimony's unreliability" in that the trial court "afforded" her "a break" during her testimony. *Id.*, ¶¶ 12-13.

The trial court denied both the initial and supplemental post-sentence motions by written order filed December 15, 2023. **See** Order, 12/15/23. Appellant filed a timely notice of appeal on January 12, 2024. The trial court and Appellant complied with Rule of Appellate Procedure 1925. **See** Pa.R.A.P.

1925(b). In his Rule 1925(b) statement, Appellant restated his challenges to the weight of the evidence with greater specificity.[4]

On appeal, Appellant states the question presented as follows:

Were the verdicts against the weight of the evidence, where they were based on the testimony of a complainant who had a strong motive to lie, contradicted herself, and were refuted by Appellant's own testimony and the stipulation to his excellent character for being a law-abiding, non-violent, and truthful individual?

Appellant's Brief, 4.

Appellant argues that the trial court erred by denying his motion for a new trial based on the weight of the evidence because the Commonwealth's evidence "was not merely incredible; it was belied by [the victim's] inconsistencies and contradictions, her strong motive to lie and admission to using criminal allegations as leverage in family court proceedings," along with the stipulated testimony to Appellant's excellent character for being a law-abiding, non-violent, and truthful person. Appellant's Brief, 14. More

---

[4] A challenge that a conviction was contrary to the weight of the evidence must be raised before the trial court in, or prior to, post-sentence motions. Pa.R.Crim.P. 607(A). Several of Appellant's claims were restated with more specificity in his Rule 1925(b) Statement than in his supplemental post-sentence motion. We conclude, however, that the claims concerning the victim's description of the assault, her post-assault actions on the same day, her failure to testify to his oral threats to coerce her to perform fellatio, as alleged in police reports, and the alleged bias demonstrated by her actions in the child custody proceeding are preserved for review as having been encompassed by the more general claims raised in the supplemental post-sentence motion. *Id.* Moreover, the trial court adequately addressed Appellant's more specific claims and thereby our review of its exercise of discretion is not hampered. *Id.*, comment ("Appellate review of a weight of the evidence claim is limited to a review of the judge's exercise of discretion").

specifically, he contends that the victim's failure to repeat, in testimony, her prior assertion to police that Appellant had threatened to "beat her ass" to force her to perform fellatio was a "sharp contradiction" without explanation. *Id.*, 15. He further alleges that the "attendant circumstances," that is, being in an unlocked exam room with options other than sitting down next to Appellant and then later saying nothing to the doctor is "illustrative of the implausibility of the [the victim's] account." *Id.*, 15-16.

Appellant also submits that this Court should treat the present allegations against him with skepticism because the victim admitted to using, in January 2020, prior abuse allegations in their custody dispute. *See* Appellant's Brief, 16. He then suggests that it is inexplicable that he was convicted of the instant charges based on the same or similar allegations that were supposedly rejected by a judge of the Court of Common Pleas in the same custody matter when it denied reconsideration in July 2020. *See id.*, 16-17. Finally, Appellant argues that his character evidence, his testimony denying the non-consensual use of force, and the subsequent communications on Instagram between the victim and himself – especially combined with the victim's request for a break while being cross-examined on the Instagram messages – all "belie" the allegations of nonconsensual, compelled, sexual relations in the pediatrician's examination room. *See id.*, 17-18.

Our standard of review of the denial of a weight claim by a trial court is to examine "the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth***

*v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. Super. 2000). In a post-sentence motion, a weight claim "is addressed to the discretion of the trial court." **Widmer**, 744 A.2d at 751. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" **Commonwealth v. Talbert**, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting **Commonwealth v. Sullivan**, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Diggs**, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." **Clay**, 64 A.3d at 1055. This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." **Id.** at 1056. "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006) (quoting **Commonwealth v. Galindes**, 786 A.2d 1004, 1013 (Pa. Super. 2001)).

Because our review is not of the arguments raised by Appellant, but of the reasoning applied by the trial court in denying the post-sentence motions

seeking a new trial on the basis of the weight of the evidence, *see Clay*, 64

A.3d at 1055, we turn first to the trial court's explanation of its ruling:

> [Appellant] points to various evidence which [he] contends, on balance, are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. In particular, [the victim's] demeanor at trial as indicative of unreliability, various statements which conflicted with [her] testimony at trial, medical records which do not include an assertion of force, the lack of corroborating evidence, [her] "bizarre" behavior after the assault, the credible testimony given by [Appellant], and the evidence of [his] good character.
>
> With regard to [the victim's] testimony, [Appellant] argues that [the victim's] request for a break during her cross-examination was an example of unreliable behavior. It is not unusual for a witness to experience discomfort when discussing a traumatic event, particularly involving a person with whom they shared a complex past. Her request for a break came after testifying for over an hour, the bulk of which was cross-examination.
>
> [Appellant] further argues that [the victim's] testimony should be disbelieved because she had motive to fabricate the charges. [He] offers two theories in support of this—the first being that she was embroiled with [him] in a custody dispute that she was losing, the second being that she was angered by [him] for speaking disrespectfully to her after the encounter in the doctor's office.
>
> [Appellant] also points to how [the victim] responded after the assault—remaining in the exam room with [Appellant] until the conclusion of the doctor's appointment, not reporting the assault to any of the medical personnel in the office, and traveling to family court before seeking medical attention or notifying police. However, she called her mother and reported the rape to her as soon as she was away from Appellant. Her mother described [the victim's] emotional state as "very upset," "crying," and that her voice was "shaky." [The victim] underwent a medical examination the same day. The medical report described her as "tearful." While at the hospital, she stated that she wanted to report the assault to the police. Then, after more than four hours at the hospital, she traveled with police and provided a report to the Special Victims Unit.

- 8 -

Ultimately, all of the issues argued by [Appellant] come down to the question of witness credibility. It is the factfinder's prerogative to decide the amount of weight to place on suppositions of a victim's credibility. The evidence need not dispel all possibilities of innocence, doubts, and credibility issues.

The Court acknowledges that there are some inconsistencies between [the victim's] testimony and prior testimony and/or statements she made, but none are so clearly of greater weight that to ignore them or give them equal weight would deny justice to [Appellant]. Inconsistencies within testimony or between testimony and prior statements are not unusual in any case. The core nature of her [] accusations remained consistent throughout—that [Appellant] exposed himself to her and forced her to perform oral sex on him.

With regard to [Appellant] as a witness, the analysis is the same. It is the factfinder's prerogative to decide the amount of weight to place on suppositions of a witness' credibility. Also, much of his testimony corroborates [the victim's] account. She was pacing around the doctor's office while holding their infant daughter when he asked her, "[C]an she suck my penis[?]" He pressed her and said, "[P]ut the baby down and sit next to me." She eventually put their daughter down and sat next to him. He then exposed himself to her, and she performed oral sex on him. He admits that he knew that she did not want him to ejaculate in her mouth, yet he did so anyway. Their story diverges only on a few points— whether or not she ever said no or refused his advances and whether or not he pushed her head down onto his penis. He is also the only witness to testify to the alleged name-calling, which [he] points to as a motive for [the victim] to fabricate her accusation. The central role of the finder of fact is resolve such conflicting versions of the same events.

Similarly, evidence of good character is to be considered evidence of a substantive fact that is to be treated as any other evidence. While good character evidence may independently engender reasonable doubt or produce a conclusion of innocence, it does not automatically create reasonable doubt.

The Court had the opportunity to consider all of the competing evidence. After consideration of everything, the fact[-]finder determined that [the victim's] testimony was truthful and accurate and the totality of evidence was adequate to prove the elements of the crimes charged beyond a reasonable doubt. The

> evidence in support of the verdict is not so tenuous, vague, or uncertain that the resulting verdict shocks the conscience, nor does it deny justice; therefore, the verdict is not against the weight of the evidence.

Trial Court Opinion, 9-12 (internal citations and footnote omitted).

Having reviewed the record ourselves, we find the court's reasoning is both cogent and persuasive. Therefore, there was no abuse of discretion by the trial court in denying a new trial. **See Commonwealth v. Rice**, 902 A.2d 542, 547 (Pa. Super. 2006) (where trial court's "conclusions are logical and supported by evidence of record" then it "did not commit a palpable abuse of discretion" by rejecting a weight claim). The trial court was able to view the victim's demeanor during the non-jury trial and concluded that her testimony, corroborated by her emotional state after the incident, as testified to by her mother and documented in her medical records, established Appellant's guilt beyond a reasonable doubt. **See Commonwealth v. Krzan**, 325 A.3d 714, 723 (Pa. Super. 2024) (not an abuse of discretion for finder of fact to reject a defendant's testimony in favor of the Commonwealth's evidence), **appeal granted on other grounds**, 2025 WL 1691501, *1 (Pa., filed June 17, 2025) (*per curiam*).

Appellant essentially asks this Court to substitute our evaluation of the quality of the evidence for that of the trial court, which we cannot do. It would be reversible error for this Court to "step[] into the shoes of the trial judge and revisit[] the underlying question of whether the verdict was against the weight of the evidence." **Clay**, 64 A.3d at 1056; **see also Commonwealth v. Chine**, 40 A.3d 1239, 1244 (Pa. Super. 2012) ("[a]s it is not the role of an

appellate court to reweigh the evidence, we will not disturb the jury's credibility determinations"). Based on our review, all the alleged weaknesses in the evidence were brought to the attention of the judge at trial, which as the fact-finder was the final arbiter of credibility and weight. *See Commonwealth v. Small*, 741 A.2d 666, 673 (Pa. 1999) (where "all of the matters complained of by appellant … were issues argued by appellant's counsel during trial and were properly weighed and rejected by the jury before it reached its verdict" then appellate weight claim fails). Moreover, it would be improper to discard the verdict based on a "mere conflict in the testimony." *Clay*, 64 A.3d at 1055 (Pa. 2013); *see also Commonwealth v. Spence*, 290 A.3d 301, 331 (Pa. Super. 2023) ("[r]esolving contradictory testimony and questions of credibility are matters for the finder of fact").[5]

We note further that Appellant's suggestion that we be "skeptical" of the victim's credibility because of a decision by the Court of Common Pleas denying reconsideration of the February 2020 custody order, concerning Appellant and the victim's infant child, would violate our standard of review. He alleges that the reconsideration was based on identical or similar allegations made by the victim against Appellant in this matter. *See*

---

[5] Appellant alleges that the victim's trial testimony was a "sharp contradiction" without explanation from what she had told police. Appellant's Brief, 15. To the contrary, the police report relied on by Appellant contained only a summary of what Appellant said to the officer and therefore could not be used to impeach at all. *See Commonwealth v. Luster*, 71 A.3d 1029, 1044 (Pa. Super. 2013) (*en banc*). Therefore, there was no contradiction in her testimony.

- 11 -

Appellant's Brief, 16-17. Appellant cross-examined the victim on the denial of reconsideration of custody at trial. *See* N.T. Trial, 2/6/23, 45, 49-52. Although Appellant introduced the July 9, 2020 order denying reconsideration, he did not establish in the record that the request for reconsideration was based on the same allegations underlying the victim's testimony at trial. The reconsideration motion was filed on February 26, 2020, four months before the sexual assault at issue here. Therefore, the reconsideration motion could not have included the same allegations, and the sexual assault allegations would necessarily not have the same relevance to the custody order as they do to the criminal charges. Further, it was a different proceeding, not conclusive of any issue at the criminal trial and judgment of sentence from which Appellant appeals.

Relatedly, Appellant argues that the victim "admitted to using the criminal courts as 'leverage' to obtain her goals within the family court system." Appellant's Brief, 16, 18. His assertion is based on her testimony, in which, under cross-examination, she agreed that she "used" an allegation that Appellant physically assaulted her in the initial custody action in January and February. *See* N.T. Trial, 2/6/23, 41. At trial, the victim not only denied that the marks on her neck from the physical assault were determined to be something other than strangulation marks, but maintained that the physical assault happened:

> Q.      … you certainly used that … alleged criminal event in your
>             attempt to get custody of your child?

> A.  It wasn't alleged.
>
> Q.  You never –
>
> A.  It was not alleged, it was true.
>
> Q.  Regardless, you had used that allegation as some type of leverage to get custody in January of your child; correct?
>
> A.  Yes.

N.T. Trial, 2/6/23, 41. It was not an abuse of discretion for the trial court to reject Appellant's zealous overstatement of the victim's supposed admission, and any weight argument based on it.

Accordingly, we hold that the trial court did not abuse its discretion by denying a new trial.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/24/2025